

FILED
Mar 08 2017, 8:23 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. William Jonas, Jr.
Hammerschmidt, Amaral, & Jonas
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Caesar A. Tabet
Mark H. Horwitch
John M. Fitzgerald
Tabet DiVito & Rothstein LLC
Chicago, Illinois

Michael A. Trippel
Phillip A. Garrett
Thorne Grodnik, LLP
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Magic Circle Corp., D/B/A
Dixie Chopper, Arthur Evans,
Wesley Evans, and Jeffrey
Haltom,

*Appellants-Plaintiffs,*

v.

Crowe Horwath, LLP,

*Appellee-Defendant.*

March 8, 2017

Court of Appeals Case No.
71A03-1607-PL-1520

Appeal from the St. Joseph Circuit
Court

The Honorable Michael G.
Gotsch, Sr., Judge

Trial Court Cause No.
71C01-1404-PL-93

**Bailey, Judge.**

Court of Appeals of Indiana | Opinion 71A03-1607-PL-1520 | March 8, 2017          Page 1 of 16

# Case Summary

Magic Circle Corporation d/b/a Dixie Chopper ("Magic Circle") and several of its shareholders filed a multi-count complaint against numerous parties, including Magic Circle's former auditing firm, Crowe Horwath LLP ("Crowe"). The trial court dismissed several counts, and this Court affirmed that decision on appeal, leaving only two counts against Crowe. Subsequent to the appeal, Crowe filed a motion to dismiss the remaining counts against it, and the trial court granted Crowe's motion on the grounds that the claims were barred by the economic loss rule and several exculpatory provisions. Magic Circle now appeals the trial court's order.

We reverse and remand for further proceedings.

# Issues

Magic Circle raises two issues for our review, which we restate as whether the trial court erred when it dismissed the complaint because:

1. The economic loss rule is inapplicable in this case; and

2. The exculpatory provisions in the engagement agreements between Magic Circle and Crowe do not operate to relieve

Crowe of all liability for the professional malpractice as alleged in the Second Amended Complaint.[1]

# Facts and Procedural History

Consonant with the standard of review, we take as true the facts as alleged in Magic Circle's second amended complaint.

Magic Circle was experiencing business and financial difficulty in late 2008 and 2009, and it hired Simon Wilson ("Wilson") and Gary Morgan ("Morgan") to lead the business through a turnaround effort. In 2008, Crowe was retained to provide auditing services for Magic Circle. Crowe continued in this role until 2013. Wilson and Morgan provided Crowe with inaccurate financial information, and did not accurately represent the company's financial condition to the board and shareholders.[2] Though Morgan departed Magic Circle in 2011, the financial problems went largely undiscovered until 2013, when Crowe's year-end audit of 2012's financial records disclosed a $14 million loss for Magic Circle.

Subsequent to this discovery, Magic Circle retained another auditing firm, which confirmed that Morgan and Wilson had not provided proper financial

[1] We reverse the trial court's order on the issues identified above. Accordingly, we do not reach Magic Circle's other arguments, including whether the exculpatory and liability limitation provisions of its agreements with Crowe are contrary to public policy.

[2] Because this Court has already affirmed the judgment of the trial court that Magic Circle failed to plead facts that would support its claims for fraud against Wilson and Morgan, we do not take as true the allegations of fraud against Wilson and Morgan.

records, that Crowe's audit reports were incorrect, and that Crowe had not discovered these problems until 2013. The financial state of the business was sufficiently dire that a recovery of the business became impossible, and Magic Circle was sold at a substantial loss to a private investment firm.

[7] Magic Circle and three of its shareholders filed suit against Wilson, Morgan, and Crowe. With leave of the trial court, Magic Circle filed its Second Amended Complaint on December 15, 2014. On February 17, 2015, Wilson filed a motion to dismiss the complaint, alleging that Magic Circle had failed to plead fraud with the specificity required by our trial rules. The trial court agreed and, on May 15, 2015, the trial court dismissed with prejudice all of Magic Circle's claims against Wilson and Morgan, as well as those of the three shareholders who had joined the suit. This court affirmed that judgment in an unpublished memorandum opinion on December 30, 2015, *Magic Circle Corp. v. Wilson*, No. 71A-03-1507-PL-790, Slip op. (Ind. Ct. App. Dec. 30, 2015), and on June 23, 2016, the Indiana Supreme Court denied a petition for transfer.

[8] After this Court's affirmance of the trial court's order of dismissal, on January 19, 2016, Crowe filed a motion to dismiss the remaining claims in the Second Amended Complaint, namely, Magic Circle's claims that Crowe aided and abetted fraud and committed accountant malpractice. After a hearing, on June 6, 2016, the trial court entered its order dismissing all of Magic Circle's remaining claims against Crowe.

[9] This appeal ensued.

# Discussion and Decision

## Standard of Review

Magic Circle argues that the trial court erred when it dismissed for failure to state a claim under Trial Rule 12(B)(6) the company's claim that Crowe had committed accountant malpractice. Our Indiana Supreme Court has announced the standard of review for appeals from orders of dismissal under Rule 12(B)(6):

> A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra,* 865 N.E.2d 602 (Ind. 2007). Thus, our review of a trial court's grant or denial of a motion based on Trial Rule 12(B)(6) is *de novo. Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *City of New Haven v. Reichhart,* 748 N.E.2d 374 (Ind. 2001). Inasmuch as motions to dismiss are not favored by the law, they are properly granted only "when the allegations present no possible set of facts upon which the complainant can recover." *Mart v. Hess,* 703 N.E.2d 190, 193 (Ind. Ct. App. 1998). Put another way, a dismissal under Rule 12(B)(6) will not be affirmed "unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *Couch v. Hamilton County,* 609 N.E.2d 39, 41 (Ind. Ct. App. 1993).

*City of E. Chicago, Indiana v. E. Chicago Second Century, Inc.*, 908 N.E.2d 611, 617 (Ind. 2009).

# Economic Loss Rule

[11] We address first one of the bases upon which the trial court rested its dismissal of Magic Circle's claims, the economic loss doctrine. Generally, the economic loss rule states:

> damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.

*Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 728 (Ind. 2010) (citation omitted).

[12] In explaining the rule, the Indiana Supreme Court has stated that "the economic loss rule reflects that the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law." *Id.* at 729. Limiting a recovery of such purely pecuniary losses to commercial law serves to ensure the application of warranty and other commercial rules, whereas a remedy at tort would allow a plaintiff buyer "'to circumvent the seller's effective limitation or exclusion of warranties under [the Uniform Commercial Code], and subject[ ] manufacturers to liability for damages of unknown and unlimited scope.'" *Id.* (quoting *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1075 (Ind. 1993)). The economic loss rule serves a second purpose related to the question of unlimited scope of damages: use of tort remedies may create "'a potential for liability so uncertain in time, class, or

amount that [a defendant should not be] fairly or practically expected to account for the potential liability when undertaking the conduct that gives rise to it.'" *Id.* at 730 (quoting *Restatement (Third) of Economic Torts and Related Wrongs* § 8, cmt. d(2) (Council Draft No. 2, 2007)).

[13] However, our supreme court has made clear that the economic loss rule is a *general* rule, and thus certain purely economic losses fall within exceptions that permit recoveries at tort. *Id.* Among the exceptions articulated by the Indiana Supreme Court are "lawyer malpractice, breach of a duty of care owed to a plaintiff by a fiduciary, breach of a duty to settle owed by a liability insurer to the insured, and negligent misstatement." *Id.* at 736. Magic Circle argues that the nature of its negligence claim—accountant malpractice—is among the exceptions to the rule.

[14] We have found no Indiana case that addresses directly the question of whether the economic loss rule applies to bar actions at tort for accountant malpractice. We note, however, that courts in our sister State of Illinois, as well as federal courts, have held that the economic loss rule does not preclude an action against accountants for professional negligence. The Illinois Supreme Court confronted the applicability *vel non* of the economic loss rule to accountant malpractice claims in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503 (Ill. 1994), *cert. denied*. In *Congregation of the Passion*, the plaintiff, an order of the Roman Catholic Church that met operating expenses through the use of contributions and investment income, sued its accounting firm for professional negligence in the preparation of financial

statements. *Id.* at 505. Congregation of the Passion prevailed at trial and the Touche Ross & Company appealed. *Id.* at 509. Among the claims of error was that the lower courts had erred in awarding damages at tort for purely economic losses associated with Touche Ross & Company's professional negligence. *Id.*

[15] Addressing Touche Ross & Company's claims, the Illinois Supreme Court observed that the economic loss rule prevents an outcome "that tort law would, if allowed to develop unchecked, eventually envelop contract law." *Id.* at 513. The Illinois Supreme Court observed that though it had held that the economic loss rule applied to certain contracts for services, the rule operated to preclude a tort recovery "only where the duty of the party performing the service is defined by the contract that he executes with his client." *Id.* at 514. "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Id.* Reviewing the agreement between Congregation of the Passion and its accountants, the court observed:

> While a client contracts with an accountant regarding some general matters, an accountant must make his own decisions regarding many significant matters, and the final decision he makes is not necessarily contingent on the contract he executes with his client. An accountant may offer different levels of service, such as audited or unaudited preparation of financial statements, but within these levels of service, the client is not required or expected to be able to direct the conduct of the accountant through contractual provisions. A client should know that an accountant must make certain decisions independently, and the client had the right to rely on the accountant's knowledge and expertise when those decisions are

made by the accountant. This knowledge and expertise cannot be memorialized in contract terms, but is expected independent of the accountant's contractual obligations.

*Id.* at 514-15.

[16] The court likened the accountant-client relationship to the attorney-client relationship because "the ultimate result of the relationship between the professional and the client is something intangible," and because whatever the written output, "the value of the services rendered lies in the ideas behind the documents, not the documents themselves." *Id.* at 515. Moreover, accountants "'have long been held to be members of a skilled profession, and liable for their negligent failure to observe reasonable professional competence.'" *Id.* (quoting P. Kelly, *An Overview of Accountants' Liability*, 15 Forum 579, 583 (1979)). The duty to act with reasonable professional competence is "independent of any contract," and "[t]ort law has traditionally afforded an avenue of recovery for accountant malpractice." *Id.* Thus, the Illinois Supreme Court held that the economic loss rule did not apply to bar an action at tort against Touche Ross & Company.

[17] Federal courts have applied *Congregation of the Passion* in similar contexts. In *Gallagher Corp. v. Mass. Mut. Life. Ins. Co.*, 940 F. Supp. 176 (N.D. Ill. 1996), the United States District Court for the Northern District of Illinois observed that the defendant, Massachusetts Mutual Life Insurance Company, rendered services akin to "'business consulting,'" and that such services were generally "advisory in character and intangible," so that the economic loss rule did not

bar a tort claim. *Id.* at 180. The same district court would later hold that the economic loss rule *did* apply, however, concluding that "absent a contract of carriage," an airline had no independent duty to transport a passenger's baggage. *Harger v. Spirit Airlines, Inc.*, No. 01 C 8606, 2003 WL 21218968 at *10 (N.D. Ill. May 22, 2003).

[18] Here, the trial court determined that the economic loss rule's general use—barring liability at tort for a purely economic loss caused by a defendant's negligence—applied to the accounting relationship between Magic Circle and Crowe. The court thus concluded that Magic Circle's negligence claim was barred, but that Magic Circle could nevertheless bring a claim for breach of contract. The court then went on to address the question of breach and the effect of the exculpatory and damage limitation provisions of the engagement letters.

[19] We address the contract's exculpatory provisions below. However, we conclude that the trial court was incorrect as a matter of law when it concluded that the economic loss rule barred Magic Circle's tort claim against Crowe. We agree with our sister courts that the full scope of the work performed by an accountant is not capable of being described in an engagement letter, and that the real benefit of the work of an auditor is the audit itself—not simply the resultant documents. Crowe's engagement letters indicate that the firm would exercise considerable independent judgment, referring on several occasions to the generation of "opinion" concerning Magic Circle's financial status. (App'x Vol. 2 at 68, 69.) The wide-ranging scope of the work is further noted in the

engagement letter with reference to Crowe's request for contact persons toward whom to direct inquiries. We accordingly hold that the trial court erred as a matter of law when it concluded that Magic Circle had failed to state a claim in tort due to the operation of the economic loss rule.

## Exculpatory Provisions

[20] Having held that Magic Circle's tort claim was not barred, we turn now to the effect of the exculpatory provisions of the various engagement letters between Magic Circle and Crowe.

[21] Construction of an exculpatory clause, like other contractual provisions, is a matter of contract interpretation and a matter of law reserved to the court. *City of Hammond v. Plys*, 893 N.E.2d 1, 3 (Ind. Ct. App. 2008).

> When reviewing a contract, we examine the language used to express the parties' rights and duties to determine their intent. *Id.* Words are given their usual meaning unless it is clear from the context that another meaning was intended. Words, phrases, sentences, paragraphs, and sections of a contract cannot be read out of context. If possible, the entire contract must be read together and given meaning.
>
> [A]n exculpatory clause must both specifically and explicitly refer to the negligence of the party seeking release from liability. But, this court has held that an exculpatory clause need not include the word "negligence" so long as it conveys the concept specifically and explicitly through other language.

*Id.* (citations and quotations omitted).

[22] The trial court here addressed an exculpatory provision in each of the various audit engagement letters that provided:

> Management is responsible for making available to us, on a timely basis, all financial records and related information and your personnel to whom we may direct inquiries. Management agrees to provide us with written representations relating to matters contained in or related to the financial statements including that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole. Because of the importance of management's representations to an effective audit, you agree to release [Crowe] and its personnel from any liability and costs relating to our services under this letter attributable to any misrepresentations by management.

(App'x Vol. 2 at 69-70.) Interpreting this provision, the trial court concluded that "the release serves to protect [Crowe] from liability due to its alleged improper conduct in performing the audit of Magic Circle, and [Crowe] is released from any duty or liability from its nonperformance of the contract." (App'x Vol. 3 at 249.)

[23] Exculpatory clauses must be given effect—however, they must be given proper effect in light of the acts they are intended to excuse and, upon review of a motion to dismiss under Trial Rule 12(B)(6), the facts as alleged in any given case. In its Second Amended Complaint, Magic Circle alleged facts that consisted of misrepresentations by management and, to the extent Crowe's errors were the result of such misrepresentations, it would by operation of the exculpatory provisions be excused for its errors. However, not all of the

allegations in the complaint depend upon misrepresentations by Magic Circle's former managers.

[24] Among the allegations in the complaint are that Crowe did not satisfy its independent professional obligation to "exercise professional skepticism" by "having a 'questioning mind' and a 'critical assessment' of audit evidence." (App'x Vol. 2 at 35.) Magic Circle alleged that Crowe ignored "fraud 'risk factors'" set forth in audit standards. (App'x Vol. 2 at 35.) Magic Circle further alleged a series of failures of exercise of due care, independent of any allegation of fraud or misrepresentation by management, including: assigning auditors who lacked expertise with Magic Circle's accounting system and "basic competence to evaluate the schedules provided by Morgan and Wilson"; failing to apprise the board of questionable transactions when Crowe was aware of such transactions; failing to inquire into back-up data; and failing "to undertake independent analysis of the company's financial record keeping system." (App'x Vol. 2 at 36-37.)

[25] These allegations, if true, constitute separate grounds for relief as they are at least facially independent of the question of management misrepresentations through spreadsheet data separate and discrepant from data found within the regular accounting systems used by Magic Circle. That is, the allegations noted above are not alleged to have been "attributable to any misrepresentations by management" (App'x Vol. 2 at 70). They are therefore not within the scope of the exculpatory clause, which by its terms does not have the effect of excusing

Crowe at tort "from any duty or liability from its nonperformance of the contract." (App'x Vol. 3 at 249.)

[26] In its reply brief, Crowe suggests an alternate basis upon which we might affirm the dismissal of Magic Circle's claim. Crowe argues that even if the exculpatory provision does not bar Magic Circle's claim of accountant malpractice as pleaded—that is, sounding in tort—provisions in the engagement letters that limit Crowe's damages have the same effect. Crowe correctly observes that we may affirm an order of dismissal on any legal basis supported by the record. *See, e.g.*, *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004) (stating, "[w]e sustain the trial court's ruling if we can affirm on any basis found in the record"), *trans. denied*.

[27] Crowe directs us to this limitation of liability provision in the engagement letters:

> LIMIT OF LIABILITY – The provisions of this section establishing a limit of liability will not apply if, as determined in a judicial proceeding, we performed our services with gross negligence and willful misconduct. Our engagement with you is not intended to shift risks normally borne by you to us. With respect to any services or work product or this engagement in general, the liability of [Crowe] and its personnel shall not exceed the fees we receive for the portion of the work giving rise to liability. A claim for a return of fees paid shall be the exclusive remedy for any damages. This limitation of liability is intended to apply to the full extent allowed by law, regardless of the grounds or nature of any claim asserted. This limitation of liability shall also apply after the termination of this agreement.

(App'x Vol. 2 at 73.) Crowe argues that even if Magic Circle's claim in tort was not subject to dismissal based upon the facts pled in the complaint, a tort claim is barred by the provision above because Magic Circle's damages claim does not seek a contract price for each allegedly negligent audit, but instead seeks compensatory, treble, and exemplary damages, as well as attorneys' fees. This argument finds some support in the trial court's order of dismissal, which states in a footnote that Magic Circle's complaint "makes no claim against [Crowe] for gross negligence or intentional misconduct." (App'x Vol. 3 at 249 n. 7.)

[28] But we hold, again, that the trial court's order was in error—in no small part because the trial court appears to have disregarded a specific allegation in Magic Circle's complaint: "Crowe's acts or omissions constitute negligence, *gross negligence and/or willful misconduct*." (App'x Vol. 2 at 51, emphasis added.) Further, any number of the facts pled by Magic Circle might support a finding of gross negligence. "Inasmuch as motions to dismiss are not favored by the law, they are properly granted only when the allegations present no possible set of facts upon which the complainant can recover." *City of E. Chicago*, 908 N.E.2d at 617 (citation and quotation marks omitted). Because the facts Magic Circle pled do not exclude the possibility of gross negligence in hiring or assigning employees or of failing to report known irregularities to the company's board, it is not possible to say that there is *no* set of facts under which a recovery might be possible. And because this is so, we must in turn conclude that the liability limitation provisions of the engagement letters fail to require dismissal of the complaint.

# Conclusion

[29] The economic loss rule does not have the effect of barring an accountant malpractice claim at tort. The exculpatory and limitation of liability clauses did not operate to preclude a recovery such that Magic Circle failed to plead a claim upon which, based upon the facts as pled in the complaint, relief could be granted. Thus the trial court erred in dismissing the Second Amended Complaint as to negligence through accountant malpractice.

[30] Reversed and remanded.

Vaidik, C.J., and Riley, J., concur.