

FILED

Dec 29 2017, 9:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Jessica A. Wegg
Jonathan C. Little
Saeed & Little, LLP
Indianapolis, Indiana

Michael K. Sutherlin
Michael K. Sutherlin & Associates
Indianapolis, Indiana

ATTORNEYS FOR JUDICIAL
APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
JOHNSON COUNTY
COMMISSIONERS AND PUBLIC
DEFENDERS

William W. Barrett
Daniel J. Layden
Williams Barrett & Wilkowski,
LLP
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Alford et al., | December 29, 2017 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 73A04-1702-PL-223 |
| v. | Appeal from the Shelby Superior Court |
| Johnson County Commissioners et al., | The Honorable Robert W. Freese, Special Judge |
| | Trial Court Cause No. 73D01-1601-PL-3 |

*Appellees-Defendants.*[1]

**Kirsch, Judge.**

[1]    Kenneth Alford ("Alford"), Terry Hasket ("Hasket"), Richard Daniels ("Daniels"), Richard Bunton ("Bunton"), Anthony Owens ("Owens"), Keith Nye ("Nye"), and Wardell Strong ("Strong") (together, "the Appellants"), who are seven men charged with crimes in Johnson County, Indiana and were assigned public defenders to represent them during their criminal proceedings,

---

[1] The full caption for the case in the trial court read:  Kenneth Alford, Terry Hasket, Richard Daniels, Richard Bunton, Anthony Owens, Keith Nye, and Wardell Strong, on behalf of themselves and all others similarly situated, v. Johnson County Commissioners, in their official capacities, The Honorable Mark Loyd, in his official and individual capacities, The Honorable Kevin Barton, in his official and individual capacities, The Honorable Lance Hamner, in his official and individual capacities, The Honorable Cynthia Emkes, in her official and individual capacities, John P. Wilson, Esq., Michael Bohn, Esq., Andrew Eggers, Esq., John Norris, Esq., Daniel Vandivier, Esq., J, Andrew Woods, and Matthew Solomon.  In order to conserve space, we only list the first named parties in the caption of this opinion.  However, according to Indiana Appellate Rule 17(A), "[a] party of record in the trial court . . . shall be a party on appeal."

In the allegations of the complaint, J. Andrew Woods and Andrew Eggers were included.  *Appellants' App. Vol. II* at 54-55.  The firm, Eggers Woods, is also identified in the complaint.  *Id*.  The complaint, however, did not contain any allegations that J. Andrew Woods and Andrew Eggers or their firm ever represented any of the Appellants or that they took, or failed to take, any action with respect to the Appellants.  On January 26, 2017, Appellants filed a Voluntary Motion to Dismiss, identifying Andrew Eggers, J. Andrew Woods, and their firm, Eggers Woods, as parties to be dismissed from the action, yet an Amended Voluntary Motion to Dismiss was subsequently filed that omitted such parties.  Pursuant to the order on the motion to dismiss at issue in this appeal, such parties were dismissed from the action.  *Id*. at 23 n.5.

appeal the dismissal of their complaint against the Johnson County Commissioners, the judges who preside over criminal cases in Johnson County, and the individual attorneys who had contracts to act as public defenders in Johnson County. The Appellants appeal from the dismissal of their complaint, in which they alleged that the rights of indigent criminal defendants under the Sixth Amendment to the United States Constitution and Article 1, section 13 of the Indiana Constitution are being ignored in Johnson County because the attorneys assigned as public defenders by the trial judges are burdened by unmanageable caseloads and are, therefore, not providing actual assistance of counsel as required by the United States Constitution and the Indiana Constitution. They raise the following dispositive issue for our review: whether the Appellants sufficiently alleged facts to support their claims for relief under the United States and Indiana Constitutions and their third-party beneficiary breach of contract claim such that the trial court erred when it dismissed their complaint.

We affirm.

## Facts and Procedural History[2]

The Indiana Legislature has established a statutory framework for providing legal defense services to indigent persons in criminal cases, which is applicable

---

[2] Oral argument was heard on this case on December 7, 2017 in the Indiana Court of Appeals courtroom in Indianapolis, Indiana.

throughout the state. *See* Ind. Code art. 33-40. This framework allows the counties in Indiana the flexibility to create local systems that cater to the needs and specific circumstances of the particular county and its citizens. The statutes dealing with public defenders permit counties to address the constitutional mandate to provide criminal defense for indigent individuals in a number of different ways. At the trial level, public defender services in Indiana are provided in one of three ways. Under the first option, Indiana Code section 33-40-7-3(a) provides that "[a] county executive may adopt an ordinance establishing a county public defender board . . . ." If a county decides to establish a county public defender board, then that local board must prepare a comprehensive plan for providing legal defense services to indigent persons that must include at least one of the following options: (1) establishing a public defender's office; (2) contracting with an attorney, a group of attorneys, or a private organization; (3) appointing attorneys on a case by case basis using an assigned system of panel attorneys; (4) in certain designated counties, establishing a public defender's office for the criminal division of the superior court. Ind. Code § 33-40-7-5. As a second option, judges from courts with criminal jurisdiction in counties with a population less than 400,000 may contract with attorneys to provide legal counsel for indigent persons charged with crimes. These contracts may run from year to year or any length of time determined by the particular judge. Ind. Code §§ 33-40-8-1, 33-40-8-3. Lastly, in certain exigent circumstances, a trial court may request that the State Public Defender provide a qualified attorney for the defense of an indigent person. Ind. Code § 33-40-2-1. In Johnson County, judges in the county courts having

criminal jurisdiction -- the four judges involved in this case – follow the second option and contract with attorneys to provide legal representation to indigent criminal defendants.

[4] Each of the Appellants in this case is an indigent defendant and was charged with at least one felony in the Johnson County Courts. The cases of six of the Appellants, Alford, Hasket, Daniels, Bunton, Nye, and Strong, are still pending before the Johnson County Courts. Owens entered into a plea agreement, the details of which are not included in the record. A public defender has been appointed to represent each of the Appellants. The Appellants' complaint names five attorneys (together, "the Public Defenders") that were assigned, at various times, to the seven named Appellants. *Appellants' App. Vol. II* at 57-60. The attorneys who act as public defenders in Johnson County act in that capacity in addition to maintaining their own private practices. The complaint makes allegations against the Public Defenders in two general areas: (1) caseload in 2014 (the year prior to when Appellants were arrested and charged); and (2) deficiencies in performance as counsel.

[5] Michael Bohn ("Bohn") represents three of the Appellants, Hasket, Daniels, and Nye. Bohn was assigned 83 unique felony cases and 69 unique misdemeanor cases in 2014. Hasket alleged that he specifically requested a fast and speedy trial, but that Bohn "disregarded or ignored" the request and ultimately waived Hasket's speedy trial rights. *Id*. at 62. Hasket also alleged that Bohn refused to comply with his requests regarding discovery, pressured him to accept a plea deal, and attempted to "leverage [his] criminal record to

persuade him to accept a plea deal." *Id*. Daniels alleged that he did not speak with Bohn until his initial hearing where Bohn "attempted to pressure him into accepting a plea deal." *Id*. at 63. Daniels claims that, since that date, Bohn has only spoken with him twice, not visited him in person, and in each interaction pressured him to accept a plea agreement. *Id*. Nye alleged that he spoke with Bohn at his initial hearing and asked for a speedy trial, but Bohn "refused to file the motion." *Id*. at 64. Nye also alleged that he had little to no contact with Bohn outside of the courtroom.

[6]     Daniel Vandivier ("Vandivier") represents Bunton and previously represented Alford for a period of time. Vandivier was assigned 50 unique felony cases and 25 unique misdemeanor cases in 2014. Bunton was arrested in Colorado and extradited to Indiana and charged with felony failure to pay child support. Bunton was released on bond and alleged that after nearly a month he had still not met or spoken with Vandivier. *Id*. Vandivier previously represented Alford, and during that period of representation, Vandivier only met with Alford during court hearings. *Id*. at 61.

[7]     Alford's case was reassigned to Matthew Soloman ("Solomon"), and Solomon represented Alford for a period of time. Alford alleged that Solomon only visited him once in jail and did not respond to his letter requesting a fast and speedy trial. *Id*. at 61, 82. Alford claims that he was "pressured to accept a plea deal despite his professed innocence." *Id*. at 61. Solomon withdrew from his representation of Alford, and John Wilson ("Wilson") was then appointed to

represent Alford, but had not yet entered an appearance at the time the complaint was filed.

[8]     Wilson represents Strong and previously represented Owens for a period of time. Wilson was assigned 176 unique felony cases and 32 unique misdemeanor cases in 2014. Strong alleged that Wilson only met with him in person at his initial hearing and, then, for more than three months, only spoke with him once by telephone. *Id.* at 65. Strong alleged that he sent Wilson letters requesting discovery and a suppression hearing and providing information he believes could exonerate him, but his letters went unanswered. *Id.* Strong specifically requested a bond reduction hearing, but Wilson did not file any request for a hearing with the trial court. *Id.* Wilson also represented Owens for a period of time. Owens alleged that Wilson "refused [his] requests to conduct discovery . . . [and] pressured him to take a plea deal." *Id.* at 66. Owens alleged that Wilson also pressured him "to waive his right to a jury trial" and misrepresented his eligibility for habitual offender status. *Id.* Owens also alleged that Wilson never visited him in jail and never filed a substantive motion on his behalf during his representation of Owens. *Id.* at 67. Owens's case was reassigned to John Norris ("Norris").

[9]     Owens is the only Appellant who was represented by Norris. Norris was assigned 4 unique felony cases and 37 unique misdemeanor cases in 2014. Owens alleged that Norris did not conduct any investigation or discovery and that he pressured Owens to waive his right to trial by jury and to accept a plea deal. *Id.* Owens eventually accepted an unspecified plea deal.

On October 8, 2015, the Appellants filed a class action complaint against: (1) the Johnson County Commissioners, in their official capacities; (2) Bohn, Vandivier, Solomon, Wilson, and Norris as individual attorneys who had entered into contracts to act as public defenders in Johnson County; and (3) four Johnson County judges in their official and individual capacities, Mark Loyd, Kevin Barton, Lance Hamner, and Cynthia Emkes[3] (together, "the Judicial Appellees"). The Appellants sought declaratory judgment, injunctive relief, and damages for alleged violations of their rights under the Sixth and Fourteenth Amendments to the United States Constitution, Article 1, Section 13 of the Indiana Constitution, and as third-party beneficiaries of the Public Defenders' contracts to act as attorneys for indigent defendants. Specifically, the complaint sought declaratory judgment stating that all of the defendants are depriving the Appellants of their rights under the United States Constitution, the Indiana Constitution, and the Public Defenders' contracts. *Id.* at 70. The complaint also sought injunctive relief to enjoin the Johnson County Commissioners from "violating the Sixth and Fourteenth Amendments to the United States Constitution in the provision of indigent defense services." *Id.* at 71. Additionally, the Appellants sought an injunction enjoining the Johnson County Commissioners and the Judicial Appellees from violating Article 1, Section 13(a) of the Indiana Constitution "in the provision of indigent defense services." *Id.* They also sought a third injunction "to compel the creation of

---

[3] Judge Cynthia Emkes retired from the Johnson Superior Court on April 28, 2017, but maintains senior judge status.

public defender services, which are not under the Courts' supervision or financial control, which are adequately funded, and which conform to the caseload standards set by the American Bar Association and the Indiana Public Defender Commission." *Id.* Lastly, the Appellants sought damages against all of the defendants for breach of contract and for payment of Appellants' costs and attorney fees. *Id.* The Appellants also sought class certification.

[11] In response to the complaint, two motions to dismiss pursuant to Indiana Trial Rule 12(B)(6) were filed: one by the Johnson County Commissioners and the Public Defenders (together, "the Non-Judicial Appellees") and one by the Judicial Appellees. After a hearing on the motions to dismiss, the trial court issued its order granting the motions to dismiss. The trial court found that the "issue of whether it may declare the Johnson County Courts' indigent criminal defense system constitutionally inadequate raises a non-justiciable question." *Id.* at 29. Specifically, the trial court found that the Appellants' request to compel the creation of public defender services was a request to rewrite the statutory scheme of public defender services, under which the establishment of public defender boards is discretionary, and that favoring "one statutorily authorized method over another would violate Indiana's separation of powers requirement." *Id.* at 30. The trial court also found that Appellants' "Sixth Amendment claims are not ripe until the outcome of the proceedings in order to determine the adequacy and any prejudice that may be associated with [their] representation," and "[u]nless and until there is an outcome with respect to the Appellants' pre-trial proceedings, a claim for breach of the indigent criminal

defense contracts is premature and has yet to accrue." *Id*. at 32, 36. The trial court further found that the Appellants have "adequate remedies at law, making equitable relief inappropriate in this action." *Id*. at 34. The trial court additionally found that the complaint "is devoid of any reference to a policy or custom of the Johnson County Commissioners that proximately caused the alleged constitutional deprivations," and "the Johnson County Commissioners lack the legal obligation, statutory or otherwise, to provide indigent criminal defense services under the Sixth and Fourteenth Amendment[s] to the United States Constitution, [and therefore] cannot be liable under the state constitutional claims, either." *Id*. at 35, 36.

[12] As to the Judicial Appellees, the trial court determined that the Appellants' claims for injunctive and declaratory relief were not ripe and that, regarding any contract claim, the Appellants had failed to state a claim upon which relief can be granted because there was no allegation that the Judicial Appellees had breached the contract. *Id*. at 42. The trial court also ruled that the Appellants had failed to state "a claim with respect to the constitutionality of the public defender system in Indiana" and that there is "no authority to strike down such a system based on the nature of the system itself." *Id*. at 43. The trial court also found that the Appellants' complaint did not present redressable claims because there was no nexus between the Judicial Appellees' actions and any harm alleged and, additionally, because the Judicial Appellees did not have the authority to set up the public defender board the Appellants were requesting.

*Id.* Lastly, the trial court found that the Judicial Appellees were entitled to immunity as to all claims for damages. *Id.* at 44. Appellants now appeal.

## Discussion and Decision

[13] A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Magic Circle Corp. v. Crowe Horwath, LLP*, 72 N.E.3d 919, 922 (Ind. Ct. App. 2017). Our review of a trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6) is de novo. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* Motions to dismiss are properly granted only "when the allegations present no possible set of facts upon which the complainant can recover." *Id.* at 922-23 (quotations omitted).

[14] The Appellants argue that the trial court erred when it dismissed their complaint for failure to state a claim. They contend that the public defender system in Johnson County systematically deprives indigent people of the right to counsel and that the rights of indigent criminal defendants under the Sixth Amendment to the United States Constitution and Article 1, section 13 of the Indiana Constitution are being ignored in Johnson County because the attorneys assigned as public defenders by the trial judges are burdened by unmanageable caseloads and are, therefore, not providing actual assistance of counsel as required by the United States Constitution and the Indiana Constitution. The Appellants assert that the trial court erred in dismissing their

complaint against both the Judicial Appellees and the Non-Judicial Appellees because their complaint sufficiently alleged violations of their rights under both Constitutions, which are attributable to the Judicial Appellees and the Johnson County Commissioners. Further, the Appellants maintain that they adequately alleged a third-party beneficiary breach of contract claim against the Public Defenders and the Judicial Appellees.

[15] The Johnson County Commissioners are responsible for establishing, implementing, and maintaining the public defense system in Johnson County, and the individual judges and attorneys carry it out. *Appellants' App. Vol. II* at 48. Pursuant to Indiana Code section 33-40-8-1, the Judicial Appellees contract with the Public Defenders to provide legal representation to indigent criminal defendants in Johnson County. Thus, the public defender system for the defense of indigent defendants is accomplished through contracts, where each attorney contracts with a specific judge to represent criminal defendants in that particular court.

[16] In their complaint, the Appellants alleged that the Johnson County Commissioners and the Judicial Appellees are constitutionally required to operate a public defense system that provides effective assistance of counsel to indigent criminal defendants and that, due to excessive and unreasonable caseloads of the Public Defenders, the Appellants are receiving deficient representation by their appointed Public Defenders. In the complaint, the Appellants raised claims that they are being deprived of adequate consultation and communication with their Public Defenders, are being deprived of

opportunities to present defenses by being pressured into pleas agreements, and are being denied their right to a speedy trial, among other assertions. While we do not discount or minimize these allegations of deficient representation that were raised in the complaint, we do not find that the Appellants' complaint properly raised claims of a systematic deprivation of their Constitutional rights upon which relief can be granted.

[17] The contracts through which the Judicial Appellees employ the Public Defenders to represent criminal defendants were attached to the Appellants' complaint and stated that the "purpose of the contract is to ensure the provision of professional legal representation for indigent criminal defendants upon court appointment." *Appellants' App. Vol. II* at 73-78. Such representation is "[s]ubject to the standards of the Indiana Rules of Professional Conduct." *Id*. Under Indiana Professional Rule of Conduct 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client," and under Comment 2 of that rule, "[a] lawyer's workload must be controlled so that each matter can be handled competently." Therefore, pursuant to the Rules of Professional Conduct, which defines the scope of representation under the Public Defenders' contracts, it is the attorney's responsibility to manage his or her caseload. Accordingly, the public defender system in place in Johnson County is not systematically flawed, as the Appellants claim. Instead, the system actually requires an attorney who contracts with the Judicial Appellees to act as a public defender not to accept any more case assignments or a greater workload than that which can be handled competently and managed with

"reasonable diligence and promptness." Ind. Professional Conduct Rule 1.3, cmt. 2.

[18]    We, therefore, conclude that the Public Defenders' contracts at issue here do not support the complaint as alleged. The Public Defenders have an obligation pursuant to the contracts to not undertake too great a workload, such that they are able to act with "reasonable diligence and promptness" in their representation of clients. *Id.* The Appellants' complaint does not allege that the Judicial Appellees have systematically compelled the Public Defenders to accept case assignments and to undertake more work than they can competently handle after the Public Defenders have declined a case assignment due to an excessive workload. The complaint merely alleges that the named Public Defenders have not provided effective assistance to the Appellants, which is an allegation of an individualized claim for relief, and not a claim of a systematic deprivation of constitutional rights. Such individualized claims are better suited for relief pursuant to criminal trial procedures, such as direct appeal, post-conviction relief, or petition for writ of habeas corpus relief, or legal malpractice actions against their individual attorneys, but these avenues can be pursued only after a claim has actually ripened.

[19]    The Johnson County public defender system may suffer from the flaw of not employing enough attorneys under contract to act as public defenders and manage the caseload for indigent criminal defendants in Johnson County. However, in order to solve that issue, a greater appropriation from the Johnson County Commissioners for hiring public defenders would be necessary, which

the Appellants are not requesting at this time. We find nothing in the current public defender system in Johnson County that would not allow the Judicial Appellees to seek additional funding from the Johnson County Council,[4] and there were no allegations that the Judicial Appellees had requested the Johnson County Council to appropriate more money and had been declined.

[20] We, therefore, conclude that the Appellants have failed to state a claim upon which relief can be granted. On the facts alleged in the complaint, including the language of the Public Defenders' contracts, it is the Public Defenders who are responsible for any deficient representation, and any alleged deficient representation is not attributable to either the Judicial Appellees or the Johnson County Commissioners. The complaint did not contain any allegations that the Judicial Appellees or the Johnson County Commissioners were compelling the Public Defenders to take on a heavier caseload than they could handle. The trial court did not err when it dismissed the Appellants' complaint pursuant to Trial Rule 12(B)(6) for failure to state a claim as to the claims under the Sixth Amendment and Article 1, section 13 of the Indiana Constitution.

[21] The Appellants also argue that the trial court erred in dismissing their complaint regarding the breach of contract claim because they adequately alleged a third-party beneficiary claim for breach of the Public Defenders'

---

[4] Pursuant to Indiana Code section 33-40-8-4, "[t]he county council of every county where the judge of any court having criminal jurisdiction has contracted with an attorney for legal services to the poor shall appropriate an amount sufficient to meet the contract obligations of a court or courts for services to the poor."

contracts. The Appellants contend that, pursuant to statute, the Judicial Appellees contracted with the Public Defenders to provide indigent defense services to the Appellants and that they are third-party beneficiaries of those contracts. The Appellants contend that neither of the parties to the contracts, the Judicial Appellees and the Public Defenders, has fulfilled the stated purpose of the contract, which was to "to ensure the provision of professional legal representation for indigent criminal defendants" subject to the standards of the Indiana Rules of Professional Responsibility. *Appellants' App. Vol. II* at 73-78. They claim that the trial court erred in finding that their claims had not yet accrued because their claims "were perfected the moment they were assigned public defenders who were breaching their contract with the Judges to provide legal representation to indigent criminal defendants." *Appellants' Br*. at 41.

[22] The Appellants' third-party beneficiary argument is based on the same premise as their constitutional arguments, that the systematic deprivation of their rights under the public defender system constitutes a breach of the Public Defenders' contracts. As we reasoned above, the allegations contained in the Appellants' complaint do not allege a systematic deprivation of the Appellants' rights under the contract. Instead, the complaint alleges that the named Public Defenders have not provided effective assistance to the Appellants, which is an allegation of an individualized claim for relief and an individualized breach of the Public Defenders' contracts. The Appellants' contentions of breach of contract present claims of legal malpractice against the Public Defenders.

[23] The elements of legal malpractice are: (1) employment of an attorney, which creates a duty to the client; (2) failure of the attorney to exercise ordinary skill and knowledge (breach of the duty); and (3) that such negligence was the proximate cause of (4) damage to the plaintiff. *DiBenedetto v. Devereux*, 78 N.E.3d 1117, 1121 (Ind. Ct. App. 2017). The Appellants' claims are allegations of a breach of the legal duty to represent them with reasonable skill and knowledge. However, although the Appellants alleged a breach of duty, they did not allege that the alleged breach was the proximate cause of damage to them. "To establish causation and the extent of harm in a legal malpractice case, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence." *Barkal v. Gouveia & Assocs.*, 65 N.E.3d 1114, 1119 (Ind. Ct. App. 2016). Therefore, the Appellants needed to allege prejudice resulting from the outcome of their cases to properly assert their breach of contract claim. As there has been no outcome in the Appellants' criminal cases,[5] any potential prejudice has yet to accrue, and the Appellants cannot show that any alleged negligence by the Public Defenders was the proximate cause of damage to them or that there was any damage at all. The trial court properly found that the Appellants' claims for breach of contract are premature and have yet to accrue.

---

[5] We note that the complaint states that Owens accepted a plea deal, but the details of the plea agreement are not included in the record.

Affirmed.

Najam, J., and Brown, J., concur.