HENDRIX *v.* HARBELIS.

[No. 1067S104. Filed October 17, 1967.]

*Fred M. Stults, Jr.,* of Gary, for appellant.

*Barce, Barce & Vann,* of Kentland, and *Chris J. Pappas,* of Gary, both for appellee.

ARTERBURN, J.—This case is here on petition to transfer from the Appellate Court. (See opinion reported in 209 N. E. 2d 906)

It is an action by plaintiff-appellee to recover damages for personal injuries which he allegedly sustained while crossing an intersection in a crosswalk for pedestrians in the City of Gary, Indiana.

The evidence in the case is brief, being that presented only by the plaintiff. It may be summarized as follows:

"That Peter Harbelis, the appellee, on April 27, 1959, was walking along a two-lane, north-south street, Lincoln Street; that upon reaching the intersection of Lincoln Street and Fourth Avenue, a four-lane, east-west highway, he stopped; that appellee 'looked around' on Fourth Avenue and Lincoln Street and saw no traffic; that appellee then proceeded across Fourth Avenue in the crosswalk and as he reached a point approximately in the middle of the two east-bound lanes the appellant collided with him, or in the word of the appellee there was a fellow 'coming running hit me'; that said collision threw him down, that he had blood on his arms and legs; that his right forearm was injured and that the right side of his coat was torn; that 'he hit me back

here with his car'; that the area of the accident was residential in nature; that there was a stop sign for southbound traffic on Lincoln Street requiring vehicles traveling south to stop before entering Fourth Avenue; that there was no electric traffic control signal at the intersection in question; there was one a block to the east of the intersection concerned and another two blocks to the west of the intersection governing movement of traffic on Fourth Avenue. There was also testimony establishing the nature and extent of the injuries sustained by the appellee."

The defendant-appellant admitted in his answer that he was the owner of the automobile and was driving it at the time and place of the accident.

The trial was by jury. At the close of appellee's evidence, appellant filed a motion for a directed verdict, which the court overruled. Appellant renewed this motion at the close of all the evidence, and the court also overruled the motion. The jury returned a verdict for the appellee in the amount of $10,000.00. Appellant relies upon the following assigned errors in his motion for a new trial:

1. The verdict of the jury is not sustained by sufficient evidence and is contrary to law.
2. The court erred in overruling appellant's motion for a directed verdict.
3. The court erred in giving certain instructions tendered by the plaintiff and refusing to give certain designated instructions tendered by the defendant, and also refusing to submit to the jury certain interrogatories tendered by the defendant.

In considering the first two items above, we must ask these questions: What duty runs from an automobile driver to a pedestrian crossing the street within a crosswalk; and was a *prima facie* case made out by the plaintiff showing a breach of the duty in the present case? We will give consideration to this question first, since a solution of the same will, to a large extent, eliminate many of the other remaining questions relating to the instructions and the interrogatories.

Burns' § 47-2032 (a) reads as follows:

"When traffic control signals are not in place or not in operation, the driver of vehicle shall yield the right-of-way, slowing down or stopping if need be, so to yield to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions stated in section 84-b (§ 47-2033 (b).''

In our opinion, this statute was applicable under the facts here presented. The plaintiff did not leave the curb suddenly before entering the crosswalk of the street, but rather he stopped, he says, and "looked around" both on Fourth Avenue and Lincoln Streets, and he saw no traffic. He then left the sidewalk and entered the crosswalk of the street. Under such circumstances, the plaintiff—under the statute—was in a place where he had a right to be, and under the statute the defendant had a duty to yield the right-of-way to the plaintiff as a pedestrian. The evidence, however, shows clearly that the defendant did not yield, but rather struck down the plaintiff in the crosswalk. To us, this constitutes a *prima facie* violation of the duty the statute imposes.

In *Gary Railways* v. *Dillon* (1950), 228 Ind. 558, 562, 92 N. E. 2d 720, 722 this Court, in construing the same statute under a situation where the plaintiff had slipped in the crosswalk and was lying in the street and was struck by the defendant's bus, said:

"In failing to yield the right of way at the intersection to the plaintiff, 'who was crossing at a crosswalk at an intersection where there were no traffic signals in operation' clearly imposes a violation of the statute in question."

We see no difference in the duty imposed in this instance than that of a case where a pedestrian is struck in a crosswalk

where electric traffic control signals are in operation, as provided in Burns' § 47-1905 (a). *Novak, Admx., etc.* v. *Chi. & C. Dist. Tr. Co.*, et al. (1956), 235 Ind. 489, 135 N. E. 2d 1; *Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N. E. 2d 896.

Generally, where one has violated the provisions of a statute in the operation of an automobile on a highway, he is *prima facie* guilty of negligence, unless the evidence discloses that it was impossible to comply to the statute or non-compliance to it was excusable because of circumstances resulting from events beyond his control. After a party establishes a *prima facie* case, the burden is then upon the defendant to come forward with any evidence which he might have to prove that compliance was impossible or excusable.

It is only where there is a total absence of evidence or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the court may g i v e a peremptory instruction, as the defendant-appellant herein requested. We find no error in the court's refusal to give these instructions, and likewise it follows that the evidence was sufficient to go to the jury.

The defendant-appellant tendered to the court 42 instructions. The court gave 20 of those tendered instructions. The appellant now claims that the court committed error because it refused to give 16 of those instructions.

In addition, the defendant tendered 27 interrogatories. The court approved 6 of those given. There comes a point when the instructions tendered are so numerous and voluminous that the opposing counsel and the court find it physically impossible to give sufficient, detailed attention and time to the detection of possible inaccuracies therein, and the court must consider whether this is unduly delaying and impeding

the process of the trial. We have said that this Court must consider such facts in the examination of claimed errors on appeal.

Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an over-emphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled. Words are mere signs or symbols of meaning and thought, which are never exact. We strive with inexact tools to work out refinements and precise lines in statements of thoughts and ideas, but are never able to reach exact perfection. In the writing of instructions, we are eternally confronted with attempts and failures at exactitude, and we must keep this human frailty in mind when we examine the language of instructions. *Noel* v. *State* (1966), 247 Ind. 426, 215 N. E. 2d 539, at p. 542; *White* v. *Evansville American Legion Home Ass'n.* (1965), 247 Ind. 69, 210 N. E. 2d 845; *Woods* v. *State* (1957), 236 Ind. 423, 140 N. E. 2d 752.

Looking at these matters realistically, we should not require absolute perfection of trial courts in the use of language or grammar where a party has tendered innumerable instructions, with the hope that the trial court inadvertently will reject a proper instruction and thus have hidden error in the record for appeal. Without going into detail as to each instruction tendered and refused in this case, we may say, most of them were on a theory contrary to that expressed in this opinion as to the duty of the defendant-appellant in the operation of the automobile at the crosswalk. Others were covered by instructions given by the court.

It is further pointed out that appellant's counsel has failed to comply with Supreme Court Rule 2-17(e), which requires

him to point out in his brief the issues and evidence applicable to instructions to show this Court how he was harmed thereby. We have examined these instructions, regardless of their number, as well as those the court gave, to which appellant objected. We find no error. We feel the trial court instructed the jury correctly and fairly on the issues presented in this case. As to the claimed error in the court's refusal to give 21 interrogatories tendered, the court having given 6, we have examined those refused and find that many are duplicitous. Some of them are mixed questions of law as well as fact. We further find that the interrogatories could not have controlled the general verdict in any event. For the reasons stated, we find the trial court committed no error.

This appeal is transferred to the Supreme Court and the judgment of the trial court affirmed.

Hunter, C. J. and Lewis and Mote, JJ., concur.

Jackson, J., dissents.

NOTE.—Reported in 230 N. E. 2d 315.