LAKE MORTGAGE COMPANY, INC. AND NICK ROMAN, JR., RECEIVER *v.* FEDERAL NATIONAL MORTGAGE ASSOCIATION, THOMAS E. SCHMAL, BETTY L. SCHMAL, JAMES ERNST AND JOYCE ERNST.

[No. 3-273A23. Filed March 26, 1974. Rehearing denied May 8, 1974. Transfer denied January 8, 1975, 262 Ind. 601, 321 N.E.2d 556.]

*Fred M. Cuppy, Gerald K. Hrebec, Thomas, Burke, Dyerly & Cuppy,* of Gary, for appellants and Federal National Mortgage Association.

*Albert C. Hand, Michael L. Muenich, Hand & Muenich,* of Hammond, for appellees Ernest, *William F. Carroll, Carroll, Barber & Sorbello,* of Crown Point, for appellees Schmal.

HOFFMAN, C.J.—This is an appeal by third-party defendants-appellants Lake Mortgage Company, Inc. (Mortgage Co.) and Nick Roman, Jr., receiver, from the granting of a new trial on a motion to correct errors filed by defendants cross-plaintiffs and third-party plaintiffs-appellees James and Joyce Ernst.

On December 1, 1970, plaintiff Federal National Mortgage Association (Federal) filed a complaint for foreclosure of a mortgage on certain property located in Crown Point, Indiana. The complaint named Thomas E. and Betty L. Schmal and James and Joyce Ernest as defendants in the action. Pursuant to a petition filed by Federal on the same date, Nick Roman, Jr. was appointed receiver of the property in question.

On December 21, 1970, the Ernsts, who had purchased the property from the Schmals under the terms of a real estate land contract, filed a third-party complaint and cross-claim against Mortgage Co. and the Schmals. Thereafter, on March 16, 1971, the Schmals filed a cross-claim against the Ernsts to foreclose the real estate land contract, and on May 19, 1971,

filed an affidavit for immediate possession. The property was subsequently turned over to the Schmals on September 9, 1971. On November 19, 1971, the Ernsts filed an amended third-party complaint and cross-claim against Mortgage Co., Federal, the Schmals, Nick Roman, Jr., as receiver, and William Carroll as trustee of a sum deposited in escrow by the Ernsts to be held subject to an agreement of settlement.

Count III of the Ernsts' five-count amended third-party complaint and cross-claim was, however, subsequently dismissed to the extent that it pertained to William Carroll, and Counts II and IV were withdrawn.

Count I of the Ernsts' amended third-party complaint and cross-claim alleged, *inter alia,* that the Ernsts were the equitable owners of the real estate in question and that they had purchased the real estate from the Schmals under the terms of a real estate land contract; that by reason of representations and actions on the part of the Schmals and Mortgage Co., the Ernsts took possession of the real estate and made payments thereon with the knowledge of Schmals and Mortgage Co.; and that the Schmals and Mortgage Co. entered into some arrangement between themselves to cause the Ernsts to become involved as defendants in an action to foreclose a mortgage on the real estate.

Count III alleged, *inter alia,* that the Ernsts deposited in escrow with the Schmals, Mortgage Co. and attorney William Carroll, as trustee, a sum totaling $1,200, which sum was based upon certain arrangements among the parties for possible settlement of the dispute; that the Ernsts were required to borrow the monies deposited in escrow and were liable therefor; and that notwithstanding the failure of the parties to settle the dispute, the Schmals, Mortgage Co. and William Carroll, trustee, wilfully failed and refused upon demand to return such sums.

Count V alleged, *inter alia,* that an order had been obtained from the court appointing Nick Roman, Jr., as receiver for

the protection of the property; that the Schmals, Mortgage Co. and Roman at all times knew that the Ernsts wanted and attempted to pay monies due on the mortgage; that at no time after December 1, 1970, did the receiver contact the Ernsts in an attempt to carry out his duties under the receivership; that the receiver permitted the Ernsts to remain in possession of the real estate; that the Schmals filed an affidavit for possession of the real estate; that the court approved such affidavit and set bond in the amount of $2,000, which the Ernsts were unable to pay; and that thereafter the Schmals evicted the Ernsts from the real estate. Count V further alleged that Roman, as receiver, made no objection to the Schmals' affidavit for immediate possession and did not object to the Ernsts' eviction in accordance with a certain arrangement between the Schmals, Mortgage Co. and Roman; and that by reason of the actions of the abovementioned parties, the Ernsts were wrongfully evicted and suffered damage thereby.

Trial on all issues except those involved in Federal's foreclosure action was commenced before a jury on March 20, 1972. At the close of all of the evidence, Mortgage Co., the Schmals and Roman moved for judgment on the evidence. After argument, the trial court entered judgment for Mortgage Co., Roman and Betty Schmal. The case against Thomas Schmal was then submitted to the jury. Thereafter, the jury returned a verdict for cross-plaintiffs James and Joyce Ernst in the amount of $12,500; and on March 30, 1972, the trial court entered judgment on the verdict. Subsequently, on May 8, 1972, the trial court entered judgment for Federal on its complaint for foreclosure.

Thomas Schmal and the Ernsts filed separate motions to correct errors and, after a hearing on December 5, 1972, the trial court stated "that because of the complexity of the issues herein, the jury may have been confused in its conclusions and verdict, and the Court now grants a new trial in this cause and the verdict rendered is held for naught."

On December 19, 1972, Mortgage Co. and Roman filed a motion requesting the trial court to clarify its ruling ordering a new trial by entering special findings of fact upon each material issue or element of the claim or defense upon which the new trial was granted. The trial court denied the motion and stated that "the evidence in this case may indicate that Nick Roman, Jr., Receiver herein, may not have discharged his duties fully * * *." The instant appeal followed.

The record discloses that during 1962 Kenneth R. and Jeanette Cunningham gave a mortgage to secure part of the purchase price of certain property located in Crown Point, Indiana. The mortgage note, in the amount of $11,000, was made payable to Neal J. Hardy, as Federal Housing Commissioner. On March 7, 1963, the note was assigned to Federal National Mortgage Association. Thereafter, the Cunninghams conveyed the property in question to Robert L. and Bette T. Golden by warranty deed. On May 4, 1963, the Goldens sold the property to the Ernsts under the terms of a real estate land contract which provided for payments of $95 per month on a purchase price of $12,300. From 1964 to 1969, Thomas E. Schmal, a real estate broker in Crown Point, collected mortgage payments from Mr. Golden and forwarded them to Mortgage Co.—Federal's local servicing agent for the account. On June 12, 1969, the Goldens conveyed the property by warranty deed to the Schmals.

The testimony of Mr. Michael Plinovich, Jr., the collection manager for Mortgage Co., revealed that the mortgage account in question had been frequently delinquent since 1964. Mr. Plinovich stated that during 1969 he had recommended to Federal that foreclosure proceedings be commenced. However, this recommendation was later withdrawn when the account was returned to current status by Mr. Schmal. It was also disclosed that no mortgage payments were received by Mortgage Co. after July 8, 1970. Mr. Plinovich again recommended foreclosure on October 9, 1970, and authoriza-

tion to commence proceedings was received from Federal on October 22, 1970.

In October, 1970, James Ernst went to the office of Mortgage Co. to inquire about a homeowners policy on the property in question. Mr. Ernst testified that at that time he was informed by Mr. Plinovich that his "house was going into foreclosure" and that upon foreclosure he would "have the first chance to pick up the mortgage." Upon learning of the impending foreclosure, Mr. Ernst tendered $99 for the October mortgage payment to Mr. Plinovich. However, the money was refused and Mr. Ernst was advised by Mr. Plinovich not to make any payments to Mr. Schmal and was further advised to retain an attorney.

Subsequently, Federal filed its complaint for foreclosure and Mr. Roman was appointed receiver. He permitted the Ernsts to remain in possession of the property; and, in a letter dated December 9, 1970, requested them to send the December rent to him in his capacity as receiver. No rents were, however, collected and Mr. Roman did not direct any further correspondence to the Ernsts.

On May 19, 1971, after the filing of Ernsts' original third-party complaint and cross-claim and the Schmals' cross-claim for foreclosure of the real estate land contract, the Schmals filed an affidavit for immediate possession of the real estate. On May 20, 1971, a writ was issued by the Clerk of the Lake County Superior Court ordering the sheriff to take possession of the property. The property was thereafter turned over to the Schmals.

During the summer of 1971, attempts were made to settle the dispute and the Ernsts advanced $1,200 to the Schmals through the Schmals' attorney, William Carroll, to be held subject to an agreement of settlement. This amount, however, constituted only partial payment of the amount then due under the land contract. When negotiations failed, the money was not returned to the Ernsts upon demand and was subsequently paid into court.

The Schmals, in October, 1971, rented the property in question to another party for the sum of $135 per month. None of the rents collected were turned over to the receiver and the receiver, after learning through periodic inspection of the property that a new tenant was moving in, did not contact Mr. Schmal or attempt to remove him from possession.

Mr. Roman filed his final report as receiver on July 14, 1972, and on November 10, 1972, the trial court approved the final report and discharged the receiver.

The principal issue presented by this appeal is whether the trial court erred in granting a new trial. However, the initial inquiry centers around the propriety of the action of the trial court in granting a motion for judgment on the evidence to third-party defendants-appellants Roman and Mortgage Co. Thus, a determination by this court that the trial court was correct in granting such motion would necessitate reversal of the trial court's decision granting a new trial.

In reviewing the granting of a motion for judgment on the evidence, we are required to consider only the evidence most favorable to the party against whom judgment on the evidence was sought. The action of the trial court in granting such motion will be found to be correct only if there is a total absence of evidence or reasonable inferences therefrom in favor of the plaintiff upon the issues. If there is any probative evidence or reasonable inferences to be drawn from the evidence, or if reasonable men might differ, then the judgment on the evidence is improper. *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 230 N.E.2d 315; *Whitaker, Admr.* v. *Borntrager* (1954), 233 Ind. 678, 122 N.E.2d 734; *McClure* v. *Austin* (1972), 152 Ind. App. 398, 283 N.E.2d 783.

The substance of the Ernsts' amended third-party complaint and cross-claim as against Nick Roman, Jr. alludes to the existence of "some arrangement" or conspiracy between Roman, Mortgage Co. and Schmal to wrongfully evict the Ernsts.

It is to be noted that there is no cause of action for conspiracy as such; but rather, the cause of action is for damage incurred as a result of a conspiracy. *Indianapolis Horse Patrol, Inc., A Corp. et al.* v. *Ward* (1966), 247 Ind. 519, 217 N.E.2d 626; *Miller, etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N.E.2d 17.

A "civil conspiracy" is considered to be a combination of two or more persons who, by concerted action seek to accomplish an unlawful purpose or to accomplish some purpose not in itself unlawful by unlawful means. *Indianapolis Horse Patrol, Inc., A Corp. et al.* v. *Ward, supra; Holloway* v. *Thompson* (1942), 112 Ind. App. 229, 42 N.E.2d 421.

It is not necessary in order to establish a conspiracy that there be direct evidence of an agreement. *Tucker et al.* v. *Hyatt* (1898), 151 Ind. 332, 51 N.E. 469, 44 L.R.A. 129. Rather, a civil conspiracy may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment. *Moore, Trustee, etc.* v. *Fletcher, etc. Admrs.* (1964), 136 Ind. App. 478, 196 N.E.2d 422 (transfer denied).

We must, therefore, in order to ascertain whether the trial court's granting of judgment on the evidence as to Roman was proper, endeavor to determine whether there is any evidence or reasonable inference to support the averment that Roman participated in a conspiracy to wrongfully evict the Ernsts.

It is asserted that pursuant to alleged arrangement, Roman, as receiver, made no objection to the Schmals' affidavit for immediate possession and did not object to the Ernsts' subsequent eviction. An examination of the record reveals no direct evidence of such an arrangement. The question, therefore, necessarily becomes one of whether the fact of Roman's failure to object is susceptible of a reasonable inference that Roman acted in concert to cause damage to the Ernsts.

The evidence is uncontroverted that the receiver did not learn of any action on the part of the Schmals to remove the Ernsts from possession until after the property was found vacant by an inspector during the summer of 1971. Where it has not been shown that Roman was aware of the alleged unlawful act until some considerable time after it was carried out, it cannot be inferred that he possessed the requisite concurrence of sentiment necessary in order to impose liability for participation in a conspiracy. See: *Moore, Trustee, etc.* v. *Fletcher, etc. Admrs., supra; Hamilton* v. *Cooley* (1933), 99 Ind. App. 1, 184 N.E. 568 (transfer denied).

Assuming, however, for the purpose of argument, that Roman did, in fact, have knowledge of the Schmals' actions in obtaining the removal of the contract purchasers, it would not have been within his province to object to either the affidavit for immediate possession or the subsequent order which directed that the Ernsts be removed from the premises.

A receiver must remain indifferent with respect to the parties to the action for foreclosure and may not favor one litigant over another. *Bosworth* v. *Terminal R. Ass'n.* (1899), 174 U.S. 182, 19 S. Ct. 625, 43 L. Ed 941. See: 2 Clark on Receivers (3d Ed. 1959), § 548, at 887-888. Any attempt, therefore, on the part of the receiver to intervene on behalf of the Ernsts or otherwise favor their position would have been improper. Accordingly, it could not be inferred that Roman, by taking no affirmative action in this regard, abetted or acted wilfully in furtherance of the alleged conspiratorial objective. See: 15A C.J.S., *Conspiracy*, § 5, at 606-607.

The gravamen of the Ernsts' amended third-party complaint and the cross-claim as against Mortgage Co. consists of an allegation that the Schmals and Mortgage Co. entered into some arrangement to cause the Ernsts to become involved as defendants in a mortgage foreclosure action. It is also

alleged that Mortgage Co. entered into some arrangement with Roman and Schmal to wrongfully evict the Ernsts.

The Ernsts assert, in general, that they were induced to purchase and take possession of the real estate by reason of representations and actions on the part of the Schmals and Mortgage Co. and also that they made payments on the real estate with the knowledge of the Schmals and Mortgage Co.

There is, however, no evidence to show that Mortgage Co. approved or assisted in the purchase of the real estate by the Ernsts; nor is there any evidence of representations or actions on the part of Mortgage Co. upon which the Ernsts might have relied in assuming possession and making payments. Further, the record is devoid of any evidence to indicate that Mortgage Co. was aware of the fact that the Ernsts had purchased the real estate on contract from the Goldens until July 28, 1964.

It is next asserted that Mortgage Co. was at all times aware that the Ernsts wanted to pay monies due and owing on the mortgage and that Mortgage Co. refused the Ernsts' tender of such payments. Appellees contend that there was evidence to the effect that Mortgage Co. during May, 1969, received monies from Thomas Schmal to reinstate a delinquent mortgage when Mortgage Co. refused identical monies from James Ernst.

An examination of the record, however, does not reveal that James Ernst tendered any monies to Mortgage Co. during the time in question. Moreover, Mr. Ernst testified, upon cross-examination, that the only tender he ever made to Mortgage Co. was during a meeting with Mr. Plinovich in October, 1970. The testimony referred to is as follows:

"Q After this meeting in October, 1970 with Mr. Plinovich did you ever tender any money to Lake Mortgage Company? Ever, up to even the current date?

"A After that meeting with—no.

"Q After that meeting, no, you never tendered any more than that one $90.00 payment then your saying, right? Or $99.00.

"A $99.00.

"Q That's the only tender you've ever made to Lake Mortgage.[?]

"A The one at the meeting with Mr. Plinovich."

The evidence further shows that during May, 1969, a check in the amount of $99 was submitted to Mortgage Co. by Robert Golden. The check, which constituted only partial payment of the amount then due, was subsequently returned to Mr. Golden and was accompanied by a letter explaining that full payment was required. A copy of the letter was also sent to the Ernsts. Shortly thereafter, Mortgage Co. received a check in the same amount from Thomas Schmal. Mr. Plinovich testified that the check from Mr. Schmal was held pending receipt of the two payments due with it and also testified as follows concerning a notation which accompanied the check:

"Q Directly underneath that entry, isn't it also true that you received a $99.00 check from Thomas Schmal with a notation, 'will mail the balance in on 6/2 or return check', isn't that true?

"A There is a comment to that effect."

The record thus discloses that it was not a tender made by the Ernsts which was refused. Rather, a check submitted to Mortgage Co. by Mr. Golden was returned because it was insufficient to reinstate the account.

It is also contended that Mortgage Co. refused James Ernst's tender of a mortgage payment in October, 1970, and that Mr. Plinovich advised him not to make any more payments to Mr. Schmal.

As previously noted, James Ernst testified that he tendered $99 during a meeting with Mr. Plinovich in October, 1970. The evidence, however, shows that mortgage payments were three months in arrears at the time such tender was made.

In *Moore et al.* v. *Anchor Federal S. & L.* (1968), 142 Ind. App. 681, 237 N.E.2d 114, a mortgagor sought to raise the defense of tender in a mortgage foreclosure action. The court

stated that in order for a mortgagor to avail himself of the defense of tender he must prove that the amount tendered constituted the full amount due and that tender had been kept good by paying money into court for the use and benefit of the mortgagee.

It follows from the decision in *Moore* that a mortgagee is not obligated to accept tender of less than the full amount due. It cannot, therefore, be said that Mortgage Co., in refusing tender of an amount insufficient to reinstate the mortgage, was guilty of conduct from which involvement in the alleged conspiracy could reasonably be inferred.

The record discloses that during the same meeting with Mr. Plinovich in October, 1970, Mr. Ernst was advised not to make any further payments to Thomas Schmal and was also advised to retain an attorney. This fact, however, does not constitute evidence susceptible of a reasonable inference that Mortgage Co. participated in the alleged arrangement.

The Ernsts further assert that they deposited $1,200 in escrow with the Schmals, Mortgage Co. and William Carroll, trustee, to be held subject to an agreement of settlement; and, that when an agreement was not reached the aforementioned parties wilfully failed and refused, upon demand, to return such sum to the Ernsts.

The evidence shows that the Ernsts, the Schmals and their respective attorneys participated in the negotiations which resulted in the Ernsts' payment of the sum in question. There is, however, no evidence that Mortgage Co. participated in the negotiations, was a party to the escrow agreement, or had any control over the monies on deposit. Moreover, while the record reveals that Thomas Schmal refused to return the deposit, it does not disclose that a similar refusal was made by Mortgage Co.

Thus, in the absence of any evidence or reasonable inferences to support the allegations against either Roman or

Mortgage Co., it must be concluded that the trial court was initially correct in granting judgment on the evidence.

The judgment of the trial court granting a new trial as to appellants herein is, therefore, reversed.

Judgment reversed.

Robertson, P.J., concurs; Staton, J., concurs with opinion.

## CONCURRING OPINION

Staton, J.—This appeal involves only Roman, the Receiver, and Lake Mortgage Company, servicing the mortgage, and the Ernsts, the conditional sales purchasers. The record clearly demonstrates that the trial court's ruling which sustained the TR. 50 motion for judgment on the evidence was correct as a matter of law. The trial court's first reason for granting a new trial: ". . . that because of the complexity of the issues herein, the jury may have been confused in its conclusions and verdict, . . ." could not have applied to either Roman or Lake Mortgage Company since the jury did not deliberate upon any issue concerning either of them. The jury's deliberations were limited to issues concerning Thomas Schmal, who is an appellee in another or second appeal. The second "clarifying" reason given by the trial court that ". . . the evidence in this case may indicate that Nick Roman, Jr., Receiver herein, may not have discharged his duties fully . . ." avoids any mention of Lake Mortgage Company and avoids Indiana Rules of Procedure, Trial Rule 59(E). The latter avoidance is fatal since the trial court should have indicated whether the verdict was:

(a) against the weight of the evidence; or
(b) clearly erroneous as contrary to the evidence; or
(c) not supported by the evidence.

If the trial court's reason was either (b) or (c) above, it should have stated why judgment was not entered upon the evidence. If the trial court's reason was (a) above, it should have set out the supporting and opposing evidence of the

issue upon Roman's duty as the receiver. This the trial court failed to do. The trial court's judgment granting a new trial should be reversed.

NOTE.—Reported at 308 N.E.2d 739.