**FILED**

May 21 2020, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

William D. Beyers
Buchanan & Bruggenschmidt, P.C.
Zionsville, Indiana

ATTORNEY FOR APPELLEES

Dane A. Mize
Skiles DeTrude
Indianapolis, Indiana

# I N  T H E
# COURT OF APPEALS OF INDIANA

Melvin Hall,

*Appellant/Cross-Appellee/Plaintiff,*

v.

Bradley Shaw, Giovanni
Narducci, and Central Indiana
Protection Agency, Inc.,

*Appellees/Cross-Appellants/Defendants.*

May 21, 2020

Court of Appeals Case No.
19A-CT-2533

Appeal from the Marion Superior
Court

The Hon. John F. Hanley, Judge
The Hon. Ian Stewart, Magistrate

Trial Court Cause No.
49D11-1805-CT-19942

**Friedlander, Senior Judge.**

[1] Melvin Hall appeals from the trial court's partial dismissal of his lawsuit against Bradley Shaw, Giovanni Narducci, and Central Indiana Protection Agency, Inc. ("CIPA") (collectively, "Defendants"), in which he alleges defamation, abuse of process, malicious prosecution, and intentional infliction of emotional distress ("IIED"). Defendants cross-appeal from the trial court's partial denial of their motion to dismiss Hall's lawsuit. We affirm in part, reverse in part, and remand.

[2] In August of 2011, Hall began working at CIPA as a security guard, eventually becoming a supervisor. Shaw is an owner, president, and employee of CIPA while Narducci is an owner, vice president, and employee. In June of 2013, Hall formed his own security company, Urban Tactical Response Agency, LLC, and resigned from CIPA to operate it. From June of 2013 to July of 2015, Shaw and Narducci allegedly engaged in a coordinated campaign with others to defame Hall and drive him out of business. According to Hall, Shaw, Narducci, other CIPA employees, and/or others working at Shaw's and/or Narducci's direction made false allegations against Hall to the Attorney General's office, various state licensing boards, Indianapolis television station WRTV, and local law enforcement. The alleged communications were mostly to the effect that Hall had been impersonating a police officer.

[3] At some point, the Marion County Prosecutor's Office charged Hall with multiple counts of impersonating a law enforcement officer, and he was arrested on June 15, 2015. On July 9, 2015, the Indiana Private Investigator and Security Guard Licensing Board revoked Urban Tactical's professional

license. On June 23, 2017, Hall's criminal trial began, during which Gerald Alexander and Guillerma Lolla-Martinez testified for the State, allegedly at Defendants' direction. Hall was acquitted of all charges.

[4] On May 22, 2018, Hall filed suit against Defendants, alleging defamation, abuse of process, malicious prosecution, and IIED. On July 11, 2018, Narducci initiated a consumer complaint with the Attorney General's office against Hall and his new security agency, Superior Tactical Response Agency, which was then operating under a probationary license. The consumer complaint was eventually dismissed. On July 31, 2018, Narducci left a voicemail for Hall, in which he allegedly made the following statements:

> "Guess what dumb*** you and your f****** probation license is going down the drain! Straight up. You suing me! I don't give a f***! You know why because you engaged us into this bull****! You mother******* are done! For real. . . So when you play this f****** tape for your f****** lawyer, you let your lawyer know that this s*** ain't going to be easy! Remember that. . . . If you think you mother******* know who I am you better go down to that city-county building and keep checking mother******…"

Appellant's App. Vol. II, p. 51.

[5] On April 12, 2019, Hall amended his complaint, adding defamation and abuse of process claims based on Narducci's July of 2018 consumer complaint, an IIED claim based on Narducci's July of 2018 voicemail, and defamation claims based on Alexander's and Lolla-Martinez's allegedly false testimony and

alleged out-of-court statements that they made before and after Hall's criminal trial.

[6] On May 8, 2019, Defendants moved to dismiss Hall's amended complaint on the basis that he had failed to state a claim upon which relief could be granted, arguing that Hall's claims of (1) defamation, abuse of process, and IIED based on events that occurred prior to May 22, 2016, were time-barred; (2) defamation based on Alexander's and Lolla-Martinez's trial testimony were barred by absolute privilege; (3) defamation based on alleged out-of-court statements by Alexander and Lolla-Martinez did not state a claim of civil conspiracy; (4) abuse of process and IIED based on Narducci's alleged July of 2018 consumer complaint with the Attorney General's office and voicemail were insufficient as a matter of law; and (5) malicious prosecution were insufficient because Defendants did not institute or cause to be instituted any legal action against Hall. Defendants also requested attorney's fees.

[7] On June 26, 2019, the trial court (1) granted Defendants' motion as to all claims against Shaw and CIPA; (2) denied Defendants' motion as to defamation and abuse of process claims against Narducci based on his July of 2018 consumer complaint and the IIED claim based on his voicemail; and (3) denied Defendants' request for attorney's fees. Defendants contend that the trial court erred in denying their motion to dismiss in one respect, while Hall contends that the trial court erred in several respects in granting Defendants' motion.

[8] Both sides appeal from the trial court's ruling on Defendants' motion to dismiss, which was granted in part, denied in part, and issued pursuant to

Indiana Trial Rule 12(B)(6), which allows dismissal for "[f]ailure to state a claim upon which relief can be granted[.]" Further,

> A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Magic Circle Corp. v. Crowe Horwath, LLP*, 72 N.E.3d 919, 922 (Ind. Ct. App. 2017). Our review of a trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6) is de novo. *Id*. When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id*. Motions to dismiss are properly granted only "when the allegations present no possible set of facts upon which the complainant can recover." *Id*. at 922-23 (quotations omitted).

*CRIT Corp. v. Wilkinson*, 92 N.E.3d 662, 666 (Ind. Ct. App. 2018) (footnote omitted).

The principles of notice pleadings are utilized in Indiana. Ind. Trial Rule 8(A) merely requires "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for the relief to which the pleader deems entitled...." Also, Ind. Trial Rule 8(F) provides that "all pleadings shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." Notice pleading is designed to discourage battles over mere form of statement and to sweep away needless controversies that have occurred either to delay trial on the merits or to prevent a party from having a trial because of mistakes in statement.

Under Indiana's notice pleading system, a pleading need not adopt a specific legal theory of recovery to be adhered to throughout the case. Indiana's notice pleading rules do not require the complaint to state all elements of a cause of action. Notice pleading merely requires pleading the operative facts so as

> to place the defendant on notice as to the evidence to be presented at trial. Therefore, under notice pleading the issue of whether a complaint sufficiently pleads a certain claim turns on whether the opposing party has been sufficiently notified concerning the claim so as to be able to prepare to meet it. A complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues.

*Shields v. Taylor*, 976 N.E.2d 1237, 1244-45 (Ind. Ct. App. 2012) (citations and some quotation marks omitted).

# Cross-Appeal Issue

## 1. Narducci's July of 2018 Consumer Complaint

Defendants cross-appeal, contending that Narducci's July of 2018 consumer complaint cannot be the basis of any defamation[1] or abuse of process[2] claims because it is protected by absolute privilege.[3] "Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements."

---

[1] "To establish a claim of defamation, a plaintiff must prove the existence of a communication with defamatory imputation, malice, publication, and damages." *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184, 186 (Ind. 2010) (citation omitted). "A statement is defamatory if it tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Id.* (citation omitted).

[2] "A party claiming abuse of process must show a misuse or misapplication of process for an end other than that which it was designed to accomplish." *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016), *trans. denied*. "The two elements of abuse of process are: (1) ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings." *Id.*

[3] Defendants allege in their Appellees'/Cross-Appellants' Brief that "Narducci filing a complaint with the Attorney General after Hall's original Complaint was filed all occurred in the context of judicial proceedings and should be protected by absolute privilege." Appellees' Br. p. 17 n.3. Although Defendants do not specifically designate this claim as a cross-appeal issue, that is precisely what it is, and we treat it as such.

*Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (citing *Wilkins v. Hyde*, 142 Ind. 260, 261, 41 N.E. 536 (1895); *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998)). "'The reason upon which the rule is founded is the necessity of preserving the due administration of justice,' *Wilkins*, 142 Ind. at 261, 41 N.E. at 536, by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims." *Hartman*, 883 N.E.2d at 777 (citing *Van Eaton*, 697 N.E.2d at 494). "For the same reason, an absolute privilege has been extended to communications made in the course of proceedings, which may be characterized as quasi-judicial, including certain administrative proceedings." *Hartman*, 883 N.E.2d at 779 (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 114, at 818-19 (5th ed. 1984)) (Rucker, J., concurring in result). Because Hall does not dispute that the evaluation of a consumer complaint with the Attorney General's office qualifies as a quasi-judicial proceeding, we consequently agree with Defendants that Hall may not pursue defamation or abuse of process claims against Narducci based on his July of 2018 consumer complaint.

## Direct Appeal Issues

### 2. Whether the Trial Court Properly Dismissed Most of Hall's Defamation Claims as Untimely

Hall contends that the trial court erred in concluding that all of his claims of defamation against Shaw and CIPA are time-barred and that most of those claims against Narducci are. Indiana Code section 34-11-2-4 (2013) provides, in part, that "[a]n action for […] injury to person or character […] must be

commenced within two (2) years after the cause of action accrues." Section 34-11-2-4 applies to claims of defamation, and the statute of limitations begins to run at the point where the plaintiff "could have reasonably ascertained damage resulting from the alleged defamation." *Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989). There is no dispute that almost all of the alleged acts of which Hall complains related to defamation occurred before May 22, 2016, or more than two years before he filed suit.[4] Hall does not claim that he failed to ascertain the damage caused by any of the pre-May 22, 2016, statements until after May 22, 2016, but, rather, that these alleged events are all part of continuing wrongs extending past May 22, 2016.

> The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. The doctrine of continuing wrong is not an equitable doctrine; rather, it defines when an act, omission, or neglect took place.

*Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005) (citations and quotation marks omitted), *trans. denied*. As Defendants note, the continuing

---

[4] The only exceptions are allegations of events to support claims of (1) defamation and abuse of process related to Narducci's July of 2018 consumer complaint, (2) IIED related to Narducci's July of 2018 voicemail, and (3) defamation related to Alexander's and Lolla-Martinez's testimony and alleged out-of-court statements before and after Hall's criminal trial. We have already concluded that Hall may not pursue defamation and abuse of process claims against Narducci based on his 2018 consumer complaint and will address the other alleged communications separately.

wrong doctrine is most often argued in medical malpractice cases, where it has sometimes been successful but "has met with less success in other types of cases." *C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 645 (Ind. Ct. App. 1999). We conclude that the continuing wrong doctrine will not help Hall in this case.

[12] Hall's amended complaint includes myriad allegations of false communications by Shaw, Narducci, Alexander, Lolla-Martinez, and others made to WRTV, the Attorney General's office, local law enforcement, and others. These allegations, however, do not represent a course of conduct that led to one injury from defamation—they make out a course of conduct that, if true, led to several distinct injuries. *See Van Eaton*, 697 N.E.2d at 494 (citing *Weenig v. Wood*, 169 Ind. App. 413, 430 n.2, 349 N.E.2d 235, 246 n.2 (1976)) ("Generally, each individual publication is a separate defamation."). Because Hall has not pled a course of conduct that led to a single injury, we conclude that the continuing wrong doctrine will not benefit him here. The trial court properly dismissed all defamation claims based on allegations of communications made before May 22, 2016.

### 3. Malicious Prosecution[5]

[13] Hall contends that the trial court erred in dismissing his malicious prosecution claim against all Defendants, while Defendants seem to argue that Hall's claims

---

[5] To establish a case for malicious prosecution, "the plaintiff must prove '(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the

of malicious prosecution are absolutely barred because it was the prosecutor who made the final decision to file criminal charges, not them. Defendants rely primarily on three recent cases from this Court to support this argument, *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539 (Ind. Ct. App. 2015), *trans. denied*, *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420 (Ind. Ct. App. 2016), and *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198 (Ind. Ct. App. 2017). To the extent that the trial court may have interpreted these cases to bar a malicious prosecution claim against a private citizen who reports allegedly criminal activity to the authorities, we conclude that such an interpretation is overbroad. In our view, the three recent cases relied upon by Defendants are entirely consistent with earlier cases stating that such claims may proceed if the facts of the case warrant.

[14] In 1927, this Court issued *Western Oil Refining Co. v. Glendenning*, 90 Ind. App. 631, 156 N.E. 182 (1927), which was the first Indiana case to conclude that a private individual who provided information to authorities that led to criminal charges, even maliciously and without probable cause, could, under certain circumstances, be shielded from liability for malicious prosecution. The *Western Oil* court made the following observations:

> There can be nothing improper in the conduct of any citizen who without malice reports to the proper official any violations of the criminal law of the state, and, if thereafter such officer makes an

plaintiff's favor.'" *Donovan v. Hoosier Park, LLC*, 84 N.E.3d 1198, 1209 (Ind. Ct. App. 2017) (quoting *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 431 (Ind. Ct. App. 2016)).

independent investigation of the matter reported to him, and following such investigation returns an indictment or information against the party charged, it cannot be said that the party so reporting to the prosecuting attorney conduct which he believes to be a violation of the law is liable in damages because of the prosecution growing out of such investigation.

*Western Oil*, 156 N.E. at 184. With that in mind, the *Western Oil* court concluded that "it must affirmatively appear that the parties sought to be charged [with malicious prosecution] were the proximate and efficient cause of maliciously putting the law in motion" in order for a malicious prosecution claim based on a criminal prosecution to succeed. *Id.* at 184-85 (citing *Malloy v. Chicago, Milwaukee & St. Paul Ry. Co.*, 34 S.D. 330 (1914)).

[15]     *Western Oil* was applied by this Court in *Barrow v. Weddle*, 161 Ind. App. 601, 316 N.E.2d 845 (1974), in which we stated the following:

> In the case at bar, the record reveals at most an inference that appellee in some manner communicated information to the prosecuting attorney which ultimately led or contributed to the filing of a charge of forgery. This inference alone could not sustain a finding that appellee 'caused the prosecution' in a sense which could result in liability in case of failure of conviction.

*Id*. at 613, 316 N.E.2d at 853. So, *Western Oil* and *Barrow* both stand for the proposition that a malicious prosecution claim can be sustained if the plaintiff can establish that the defendant did, in fact, cause the criminal prosecution on which the later civil suit is based. *See also Conwell v. Beatty*, 667 N.E.2d 768, 778 (Ind. Ct. App. 1996) ("First, none of the Big R defendants instituted or caused

to be instituted a prosecution against Conwell. The prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation."). Contrary to Defendants' argument, three of our more recent cases are consistent with this approach.

[16] In *Bah*, the plaintiff was a convenience store manager suspected of theft by her employer, Mac's, who reported its suspicions to the Indianapolis Metropolitan Police Department ("IMPD"). 37 N.E.3d 539. IMPD and the Marion County prosecutor's office conducted their own investigation, which involved interviewing Bah's former supervisor, after which the prosecutor charged Bah with theft. *Id.* After Bah was found not guilty of theft, she sued Mac's for, *inter alia*, malicious prosecution. *Id.* We affirmed the trial court's grant of summary judgment in favor of Mac's, concluding that "[h]ere, Appellees did not institute or cause to be instituted the criminal action against Bah; the prosecutor did." *Id.* at 547.

[17] *Ali* involved a home healthcare worker who was charged with two counts of Class D felony theft based on allegations that she had stolen jewelry from patients. 53 N.E.3d 420. Prior to filing charges,

> IMPD conducted an investigation of both thefts and interviewed numerous witnesses and suspects, including Ali. Alliance and [outside investigator Larry] Logsdon cooperated by providing IMPD with the information gathered during Logsdon's investigation. IMPD Detective Michael Schollmeier executed a probable cause affidavit implicating Ali as the perpetrator of both thefts.

> Marion County Deputy Prosecutor Robert Reel reviewed the evidence submitted by IMPD and concluded that probable cause existed to charge Ali with both thefts. A Marion Superior Court judge made a determination of probable cause and issued a warrant for Ali's arrest.

*Id.* at 426-27. Following her acquittal, Ali sued her former employer for, *inter alia*, malicious prosecution. *Id.* We affirmed the trial court's grant of summary judgment in favor of the former employer, stating that "[i]n short, the prosecutor, not Appellees, initiated the action based on IMPD's investigation[.]" *Id.* at 432.

[18] Finally, in *Donovan*, Donovan was arrested, charged with, and acquitted of, *inter alia*, Class B misdemeanor disorderly conduct after allegedly struggling with Indiana Gaming Commission agents who had been informed by a casino that he had been banned from its premises. 84 N.E.3d 1198. Although alerted to Donovan's presence by the casino, the disorderly conduct charge, at least, had little to do with the information provided by the casino, as it was based on behavior allegedly witnessed by the agents who were attempting to detain Donovan. The trial court presiding over Donovan's subsequent malicious prosecution claim granted summary judgment in favor of the defendant casino, and we affirmed, stating that "[h]ere, the Hoosier Park Appellees did not institute or cause to be instituted the criminal action against Donovan; the prosecutor did." *Id.* at 1209.

[19] In *Bah*, *Ali*, and *Donovan*, summary judgement was entered in favor of the defendants because designated evidence of an intervening investigation

established that the authorities were the proximate cause of the prosecution, not the person or entity who initially alerted the authorities. None of the three cases stated, or was based on the proposition, that such claims are barred. We decline Defendants' seeming invitation to adopt a rule that claims of malicious prosecution based on a criminal charge are absolutely barred.[6]

[20] With this in mind, we turn to Hall's claim of malicious prosecution against Defendants. As mentioned, dismissal for failure to state a claim under which relief can be granted is appropriate only "'when the allegations present no possible set of facts upon which the complainant can recover[,]'" *CRIT*, 92 N.E.3d at 666 (quoting *Magic Circle*, 72 N.E.3d at 922-23), and we conclude that this is not one of those cases. Hall alleges that "Shaw and Narducci, individually, and in their capacity as agents of CIPA, maliciously caused the Marion County Prosecutor's office to initiate a felony prosecution against Hall by conspiring with [ ] Alexander, [ ] Lolla-Martinez[, and others] to provide false testimony to try to incriminate Hall for impersonating a public servant." Appellant's App. Vol. II, p. 48. If this claim is true—and we stress that we

---

[6] In recent years, there have been several other malicious prosecution cases that made their way to this Court based on claims that a private party was the cause of a criminal prosecution, at least two of which had resulted in judgments in favor of the plaintiff, and none of which was resolved on the basis that such claims are barred. *See, e.g.*, *Chalfant v. Lods*, 994 N.E.2d 740 (Ind. Ct. App. 2013) (affirming the denial of defendant's motion for summary judgment), *trans. denied*; *Waldrip v. Waldrip*, 976 N.E.2d 102 (Ind. Ct. App. 2012) (reversing the grant of defendant's motion to dismiss); *Glass v. Trump Ind., Inc.*, 802 N.E.2d 461 (Ind. Ct. App. 2004) (affirming judgment, entered after trial, in favor of defendant); *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084 (Ind. Ct. App. 1992) (affirming judgment, entered after trial, in favor of plaintiff), *trans. denied*; *Duvall v. Kroger Co.*, 549 N.E.2d 403 (Ind. Ct. App. 1990) (affirming grant of summary judgment in favor of defendant); *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513 (Ind. Ct. App. 1989) (affirming judgment in favor of plaintiff), *trans. denied*.

must assume as much at this stage—it is sufficient to allow a finding that Defendants were the "proximate and efficient cause" of Hall's prosecution. *See Western Oil*, 156 N.E. at 184. We therefore conclude that the trial court erred in dismissing Hall's malicious prosecution complaint.

## 4. Alexander's and Lolla-Martinez's Testimony and Out-of-Court Statements Made After May 22, 2016

Hall's amended complaint contains the following allegations related to the testimony given, and out-of-court statements made by, Alexander and Lolla-Martinez:

> 79. On June 23, 2017, Lolla-Martinez testified during Hall's criminal trial and provided these same or substantially similar false statements in Court that Hall impersonated a police officer and falsely testified that she had no knowledge of CIPA.

> 80. On June 23, 2017, Alexander testified during Hall's criminal trial and provided these same or substantially similar false statements in Court that Hall impersonated a police officer.

> […]

> 82. Lolla-Martinez and [Alexander] made these statements at the direction of Shaw, Narducci, and CIPA.

> 83. Upon information and belief, during June of 2017, before the court proceeding, Lolla-Martinez communicated to others in the community outside of Court that Hall had impersonated a police officer.

84. Upon information and belief, Alexander communicated to others in the community outside of Court during June of 2017 before the court proceeding that Hall had impersonated a police officer.

85. Upon information and belief, Lolla-Martinez communicated to others in the community outside of Court after the court proceeding on June 23, 2017, that Hall had impersonated a police officer.

86. Upon information and belief, Alexander communicated to others in the community outside of Court after the court proceeding on June 23, 2017, that Hall had impersonated a police officer.

[…]

88. Upon information and belief, Shaw and Narducci also encouraged Lolla-Martinez and Alexander to continue to communicate to others in the community that Hall impersonated a police officer after the court proceeding on June 23, 2017.

[….]

123. Upon information and belief, Lolla-Martinez and/or Alexander continued to communicate to others in the community that Hall impersonated a police officer after the court proceeding on June 23, 2017, at Shaw and Narducci's direction as part of the conspiracy to continue to defame him and eliminate his competitive business.

124. Shaw and Narducci, individually, and in their capacity as agents of CIPA, conspired with [    ] Alexander, [  ]

Lolla-Martinez, [and others] to defame Hall's reputation by written and oral means.

125. Shaw and Narducci, individually, and in their capacity as agents of CIPA, conspired with [      ] Alexander, [ ] Lolla-Martinez [and others] to maliciously defame Hall's reputation for the purpose of eliminating his competitive security agency to benefit CIPA's business interest.

[…]

128. The aforementioned statements were defamatory *per se* against Hall because they implied and/or directly stated that Hall was committing a crime by impersonating a police officer[.]

Appellant's App. Vol. II, pp. 40-41, 45-46.

[22] Hall contends that the trial court erred in concluding that Alexander's and Lolla-Martinez's testimony and alleged out-of-court statements cannot support defamation claims against Shaw, CIPA, and Narducci as part of an alleged civil conspiracy. Defendants argue that (1) Alexander's and Lolla-Martinez's testimony cannot form the basis of any defamation action as it is covered by absolute privilege; (2) Hall has failed to state any of these defamation allegations with sufficient specificity in his amended complaint; and (3) Hall has failed to sufficiently plead a civil conspiracy as to their testimony or out-of-court statements.

## A. Trial Testimony

It is undisputed that Alexander's and Lolla-Martinez's trial testimony cannot support a defamation action against *them* because it is protected by absolute privilege. As mentioned, "Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Hartman*, 883 N.E.2d at 777 (citations omitted). Hall contends, however, that the privilege does not extend to cover Defendants because none of them testified at his criminal trial. The Indiana Supreme Court, however, has stated that the privilege covers all relevant *statements* made in the course of a judicial proceeding, not the persons who made them. *Id.* If the statement is protected, it follows that it cannot be used to support a defamation action against anyone.[7]

## B. Out-of-Court Statements

## 1. Specificity

Defendants contend that Hall's allegations of defamation based on Alexander's and Lolla-Martinez's out-of-court statements are insufficiently specific to survive a motion to dismiss. Defendants rely on the following language from *Trail v. Boys and Girls Clubs of Northwest Ind.*, 845 N.E.2d 130 (Ind. 2006):

---

[7] Because we have concluded that Alexander's and Lolla-Martinez's trial testimony is protected by absolute privilege, we need not address Defendants' argument that Hall failed to sufficiently plead that they falsely testified as part of a civil conspiracy with Defendants.

But even under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed, hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. There is sound reason for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.

[….]

Permitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought by individuals who allege nothing more than that someone must have said something defamatory about them, or else they would not have been terminated or unable to secure new employment. While many of these individuals might have an actual grievance, merely making such an accusation does not establish a claim sufficiently to permit courts to determine its legal legitimacy. When all is said and done, Trail's complaint is little more than an allegation of this nature. Consequently, we affirm the trial court's dismissal of this claim.

*Id.* at 136-38 (citations omitted).

[25] Defendants seem to argue that this language requires the alleged statements to be included verbatim, but we do not think that *Trail* goes quite that far. While *Trail* establishes "the necessity of including the alleged defamatory statement in the complaint[,]" *id.* at 136*,* it conspicuously lacks the terms "verbatim," "quotation," or "*in haec verba*." If the *Trail* court had intended to impose such a

strict requirement, it could easily have done so.  Moreover, we do not see how a verbatim recitation is absolutely necessary to address the *Trail* court's concerns that (1) the trial court needs to be able to determine whether an alleged statement is legally defamatory and (2) defendants need to be able to prepare appropriate defenses.  We believe that a paraphrased statement—if it is sufficiently specific—can address these concerns just as effectively as a direct quotation.

[26]  That said, we turn to the pleadings in this case and conclude that Hall's allegations regarding out-of-court statements by Alexander and Lolla-Martinez are sufficiently specific to survive a Trial Rule 12(B)(6) motion to dismiss. "False defamatory words, if written and published, constitute a libel; if spoken, a slander." *Branaman v. Hinkle*, 137 Ind. 496, 502, 37 N.E. 546, 548 (1894) (citation omitted).  Defamation may further be characterized as *per se* or *per quod*.  "In the case of slander, a communication is defamatory *per se* under well-settled common law rulings if it imputes:  1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation, or; 4) sexual misconduct." *Baker v. Tremco Inc.*, 890 N.E.2d 73, 83 (Ind. Ct. App. 2008) (citation omitted), *affirmed in part, vacated in part on other grounds by Baker v. Tremco Inc.*, 917 N.E.2d 650 (Ind. 2009).

[27]  Hall alleges that Alexander and Lolla-Martinez "communicated to others in the community outside of Court [before and] after the court proceeding on June 23, 2017, that Hall had impersonated a police officer." Appellant's App. Vol. II, pp. 40-41.  The lack of a quoted statement does not prevent us from

determining that the statements, as alleged, clearly impute criminal conduct and are therefore defamatory *per se*, if true. By the same token, we think that the allegations are specific enough to allow Defendants to formulate potential defenses. In the end, Hall's claims regarding Alexander's and Lolla-Martinez's out-of-court statements go far beyond the sorts of claims which concerned the *Trail* court, *i.e.*, "claims brought by individuals who allege nothing more than that someone must have said something defamatory about them[.]" *Trail*, 845 N.E.2d at 137.[8]

## 2. Civil Conspiracy

[28] Hall contends that the allegedly false out-of-court statements of Alexander and Lolla-Martinez were made at the direction of Defendants, allowing a defamation claim to proceed against Defendants under a theory of civil conspiracy. "'A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means.'" *Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016) (quoting *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 962 (Ind. Ct. App. 2014), *trans. denied*). Indiana has no separate civil cause of action for conspiracy; however, there is a civil cause of action for damages resulting from a conspiracy. *Sims v. Beamer*, 757

---

[8] We think that an absolute requirement that the statement be pled verbatim would frequently present problems in slander cases, where the transitory nature of the communication could make accurate recollection of the exact wording difficult or impossible, even if the clearly defamatory character of the communication is recalled with clarity.

N.E.2d 1021 (Ind. Ct. App. 2001). In other words, allegations of a civil conspiracy are just another way of asserting a concerted action in the commission of a tort. *Boyle v. Anderson Fire Fighters Ass'n Local 1262, AFL-CIO*, 497 N.E.2d 1073 (Ind. Ct. App. 1986), *trans. denied*. The Indiana Supreme Court has summarized the evidentiary requirements as follows: "It is not necessary in order to establish a conspiracy that there be direct evidence of an agreement. Rather, a civil conspiracy may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment." *Lake Mortg. Co., Inc. v. Fed. Nat. Mortg. Ass'n*, 159 Ind. App. 605, 612, 308 N.E.2d 739, 744 (1974) (citations omitted), *trans. denied*.

[29]  We conclude that Hall's allegations are sufficient to support claims of a civil conspiracy to defame Hall based on Alexander's and Lolla-Martinez's allegedly false out-of-court statements. Hall alleges that Alexander and Lolla-Martinez falsely testified that he had impersonated a police officer and that their out-of-court statements were consistent with their testimony. Hall also alleges that Alexander and Lolla-Martinez made their out-of-court statements at the direction of Defendants as part of a conspiracy to defame him and destroy his business. Hall's allegations—which, again, must be taken as true at this stage of the proceedings—are sufficient to support a claim that Alexander's and Lolla-Martinez's out-of-court statements were defamatory and made in furtherance of a conspiracy involving Defendants.

## 5. Civil Conspiracy with Regard to Narducci's July of 2018 Voicemail

[30]  Hall contends that the trial court erred in dismissing IIED[9] claims against Shaw and CIPA related to Narducci's voicemail, which he argues should be able to proceed on a theory of civil conspiracy. Hall alleges the following related to the voicemail:

> 161. At all times herein Shaw, Narducci, [and others] were acting as agents of CIPA and were co-conspirators.
>
> [….]
>
> 165. Additionally, Narducci, as an agent of CIPA, in furtherance of the conspiracy to inflict extreme emotional distress, left a voice mail for [Hall] on July 31, 2018, in response to the lawsuit, and said, in part, in a rude and threatening manner, "Guess what dumb*** you and your f****** probation license is going down the drain! Straight up. You suing me! I don't give a f***! You know why because you engaged us into this bull****! You mother******* are done! For real. . . So when you play this f****** tape for your f****** lawyer, you let your lawyer know that this s*** ain't going to be easy! Remember that. . . . If you think you mother******* know who

---

[9] "Our Supreme Court has defined the tort of IIED as 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.'" *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013) (quoting *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)), *trans denied*. "The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Id.*

I am you better go down to that city-county building and keep checking mother******..." (Exhibit 35).

166.  All of these wrongful actions herein were made in furtherance of the conspiracy to intentionally inflict emotional distress for the purpose of eliminating Hall's competitive security business and caused Hall to sustain severe emotional distress.

167.  CIPA has responsibility for all of the injuries and damages caused by the extreme, outrageous, and illegal actions of its agents:  Shaw, Narducci, [and others] because all of these persons were conspiring together to intentionally cause Hall to suffer emotionally in furtherance of CIPA's business interests to eliminate Hall as a competitor.

Appellant's App. Vol. II, pp. 50–52.

[31]  As mentioned, direct evidence of an agreement is not necessary to establish a civil conspiracy, which "may be asserted through circumstantial evidence or by averment of isolated or independent facts susceptible of an inference of concurrence of sentiment." *Lake Mortg. Co.*, 308 N.E.2d at 744.  We conclude that Hall has met this threshold here, as he did with claims related to Alexander's and Lolla-Martinez's out-of-court statements.  Hall alleges that Narducci left the July of 2018 voicemail as part of a conspiracy with Shaw and others, as agents of CIPA, to intentionally inflict emotional distress on Hall in furtherance of their interest in eliminating Hall as a business competitor.  We conclude that these allegations are sufficient to state a claim upon which relief may be granted.

[32] To summarize, we conclude that the trial court erred in denying Defendants' motion to dismiss Hall's defamation and abuse of process claims based on Narducci's July of 2018 consumer complaint with the Attorney General's office. Moreover, we conclude that the trial court correctly dismissed Hall's defamation claims based on (1) alleged events that occurred before May 22, 2016, and (2) Alexander's and Lolla-Martinez's trial testimony. Finally, we conclude that the trial court erred in dismissing Hall's (1) malicious prosecution claims against all Defendants based on his criminal prosecution, (2) defamation claims against all Defendants based on Alexander's and Lolla-Martinez's out-of-court statements made before and after Hall's criminal trial, and (3) IIED claims against Shaw and CIPA based on Narducci's July of 2018 voicemail. We remand for further proceedings consistent with this opinion.

[33] The judgment of the trial court is affirmed in part and reversed in part, and we remand for further proceedings.

Altice, J., and Tavitas, J., concur.